United States District Court
Southern District of Texas
**ENTERED**
June 10, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HALCYON BIOMEDICAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-690 |
| | § | |
| GLATT AIR TECHNIQUES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Halcyon Biomedical Inc. has sued Glatt Air Techniques, Inc., asserting fraudulent inducement, negligent misrepresentation, contract breach, conversion, and violations of the Texas Deceptive Trade Practices Act. (Docket Entry No. 9 at 16–34). In September 2017, Halcyon contracted with Glatt to make dissolvable tablets for testing for sickle-cell disease. (*Id.* at 6–14). Halcyon alleges that Glatt made misrepresentations about the agreement, its ability to meet Halcyon's tablet requirements, and payment arrangements; breached the agreement; and failed to return Halcyon's "analytical column" or "mini-tab pressing tooling" after their relationship deteriorated. (*Id.*).

Glatt moved to dismiss for lack of personal jurisdiction, improper venue, failure to state a plausible claim, and judgment on the pleadings. Halcyon filed an amended complaint and responded, arguing that the court has specific jurisdiction, venue is proper, and the amendment made the motions to dismiss for failure to state a plausible claim and for judgment on the pleadings moot. Glatt replied that the motions remain in need of decision, there is neither specific jurisdiction nor proper venue, and the amended complaint fails to allege sufficient facts to state a plausible claim. Halcyon surreplied. (Docket Entry Nos. 8–9, 10, 16, 19).

After a careful review of the original and amended complaints; the motions, response, reply, and surreply; the properly considered documents; and the applicable law, the court denies the motion to dismiss. Halcyon has made a prima facie showing of specific jurisdiction, venue is proper, and the amended complaint has made moot the motions to dismiss for failure to state a claim and judgment on the pleadings. The reasons are explained in detail below.

## I. Background

The facts are drawn from the amended complaint, the documents attached to it, and the parties' properly considered submissions. Halcyon, a company headquartered in Houston, Texas, develops tests to screen for medical conditions. (Docket Entry No. 9 at 1). Glatt is a New Jersey company that specializes in developing "solid dosage pharmaceuticals (tablets)." (*Id.* at 1–3). Glatt has no employees, bank accounts, property, service agent, or mailing addresses in Texas, and does not "advertise or regularly solicit business in Texas." (Docket Entry No. 8-1 at 1–2).

Halcyon's work on a test for sickle-cell disease required a tablet made of certain substances that would "dissolve[] completely." (Docket Entry No. 9 at 3). In May 2017, Halcyon's president, Sean Gifford, viewed Glatt's website, which stated that Glatt had experience making dissolvable tablets. (*Id.* at 2–3). Gifford contacted Glatt through the website contact form, asking if Glatt could make fully dissolvable tablets to screen for sickle-cell disease. (*Id.* at 7). Gary Selander, Glatt's Senior Director of Business Development, responded that Glatt had "deep[]" experience making tablets and suggested a teleconference. (*Id.*). Halcyon signed a nondisclosure agreement and Steve Radovanovich, Glatt's Texas business director, scheduled a call. (*Id.* at 7–8).

Between May and September 2017, Halcyon and Glatt spoke by phone and exchanged emails about the tablet requirements. (*Id.* at 2–11). Glatt assured Halcyon that it could make tablets that would dissolve down to particles of 2 to 3 micrometers within a couple minutes. (*Id.*

at 3–4, 9–10). In September 2017, Glatt sent Halcyon a purchase order and a sales proposal. (Docket Entry Nos. 9-9, 9-11). Gifford signed the proposal in Texas. (Docket Entry No. 9 at 11). The sales proposal described the services that Glatt would provide and set out the terms governing the parties' relationship. Glatt had to:

> develop a process of combining two individual materials Sodium Metabisulfite and Saponin in a solid dosage form. The solid dosage form may be a Mini Tablet or a Drug Coated & Encapsulated Pellet and will be used as part of a Medical Diagnostic Kit.

(Docket Entry No. 9-9 at 3). Glatt would deliver the tablets to "ExWorks, Glatt facility, Ramsey, NJ"; Halcyon would be billed for shipping costs; New Jersey sales tax would apply; raw materials would be sent to Glatt's New Jersey address; and Glatt's work would conform with FDA and New Jersey standards. (*Id.* at 11, 15). The sales proposal warned that:

> Glatt does not guarantee the successful outcome of any stage described in this Proposal. In the event of an error or omission in performance of services, Glatt's sole obligation and liability shall be to repeat the Services, or the affected part thereof, at no additional cost to the Client and at the earliest date as determined by Glatt.

(*Id.* at 16).

By February 2018, Glatt had made sample tablets and sent some to Halcyon for testing, along with an invoice for $15,446.24. (Docket Entry No. 9-1 at 7). Halcyon found that the tablets took more than a couple minutes to dissolve and contained an "enormous amount" of "insoluble components." (Docket Entry No. 9-13). Over the next month, Glatt and Halcyon discussed over phone and by email how to change the tablets, discussing different formulas. (Docket Entry Nos. 9-13, 9-14). In April 2018, Glatt sent Halcyon new sample tablets and a second invoice, this one for $36,651.65, for Glatt's work in March. (Docket Entry Nos. 9-14–9-15). Halcyon found that the samples still failed its requirements. (Docket Entry No. 9-1 at 7). Halcyon objected to the February and March invoices because it could not use the tablets. (*Id.* at 7–8). Glatt refused to do

more work on the tablets until Halcyon paid the invoices. On May 2, 2018, Gifford and Selander agreed that Halcyon would pay $15,446.24 of the invoices and that Glatt would try again to make a tablet meeting the requirements. (*Id.* at 8; Docket Entry No. 9-16). Halcyon wired the $15,446.24 to Glatt on May 4. (Docket Entry No. 9-1 at 8).

On May 17, Glatt "rescind[ed] the offer," declining to work on the tablets until Halcyon paid the $36,561.65 left unpaid on the two invoices. (Docket Entry No. 9-19). Glatt stated that its work had been "reasonable" because Halcyon learned "important points about the technical specs required for the [tablets] to properly support the effectiveness of [the] diagnostic test." (Docket Entry No. 9-17).

The relationship between Halcyon and Glatt continued to sour. Gifford sent an email asking Selander to "confirm" in writing that Glatt would not ask Halcyon to pay the "potentially fraudulent" invoices. (Docket Entry No. 9-18 at 2). Glatt did not respond to that request, but offered to return Halcyon's "analytical column" and "mini-tab tablet press tooling" if Halcyon sent a "FedEx or UPS account number." (*Id.*; Docket Entry No. 9-20). Halcyon provided a FedEx account number, but Glatt did not return the column or tooling. (Docket Entry No. 9-1 at 9).

Halcyon sued Glatt, asserting fraudulent inducement, negligent misrepresentation, contract breach, conversion, and violations of the Texas Deceptive Trade Practices Act. (Docket Entry No. 9 at 16–34). Halcyon alleges that Glatt employees made intentional misrepresentations in emails and over phone conversations, inducing Halcyon to contract with Glatt and to partially pay the invoices; failed to disclose material information about the substances used in the sample tablets; breached the sale-proposal provisions and other, informal agreements; and unlawfully kept the column and tooling. (*Id.*).

Glatt moved to dismiss and sought judgment on the pleadings, arguing a lack of personal jurisdiction, improper venue, and the original complaint's failure to state a plausible claim. (Docket Entry No. 8). Glatt argued that the court lacks personal jurisdiction because Glatt does not have employees, property, or a service agent in Texas; Glatt employees did not meet with Halcyon in Texas; Glatt does not regularly market or conduct business in Texas; Glatt's website is neither interactive nor directed to Texas residents; Halcyon contacted Glatt by submitting an inquiry through Glatt's website; the sales proposal stated that Glatt would perform all the services in New Jersey; Glatt delivered the completed tablets to a New Jersey facility; emails and telephone calls "are not sufficient to establish specific jurisdiction over a non-resident defendant"; and requiring Glatt to litigate in Texas would be unfair because "[Glatt], the evidence, and witnesses reside in New Jersey." (*Id.* at 12–17). Glatt argued that venue in the Southern District of Texas is improper because Glatt resides in New Jersey and there are "no facts that relate [Halcyon's] claims to the Southern District." (*Id.* at 17–18). Glatt stated that the original complaint failed to state a plausible claim because New Jersey law applies, and Halcyon's allegations failed to state a plausible claim under either New Jersey or Texas law. (Docket Entry No. 18–21).

Halcyon filed an amended complaint, elaborating on the alleged misrepresentations and contract breaches in considerable detail, and attaching 20 documents in support. (*Compare* Docket Entry No. 9, *with* Docket Entry No. 1). Halcyon also responded to the motion to dismiss, arguing that: the motions for failure to state a claim and for judgment on the pleadings are moot in light of the amended complaint; the court has personal jurisdiction over the fraud-based claims because of the allegations and submissions showing that Glatt employees made intentional misrepresentations to Halcyon by phone and email; and the court has pendent jurisdiction over the nonfraud claims because they "arise out of the same common nucleus of operative facts as the fraudulent

inducement claims." (Docket Entry No. 10 at 5–10). Halcyon's arguments for venue mirrored the personal-jurisdiction arguments. (*Id.* at 11–12).

Glatt replied that the fraud allegations do not establish personal jurisdiction because Halcyon initially contacted Glatt; Glatt employees neither traveled to Texas nor made the alleged misrepresentations in Texas; the sales proposal stated that "Glatt does not guarantee the successful outcome of [the services]"; and "telephone calls, emails, facsimiles, and mail between a nonresident defendant and a Texas resident are insufficient contacts to establish specific jurisdiction." (Docket Entry No. 16 at 2–4 (quoting Docket Entry No. 8-2, ¶ 9.2)). Glatt argued that the District of New Jersey is the proper venue because the acts or omissions giving rise to the claims all occurred there. (*Id.* at 6). Glatt finally contends that the motions to dismiss for failure to state a claim and for judgment on the pleadings are not moot because the amended complaint does not plead fraud with the specificity required under Federal Rule of Civil Procedure 9(b), and because Glatt did not breach the sales-proposal terms. (*Id.* at 6–9).

Halcyon surreplied, explaining that "[i]n cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim." (Docket Entry No. 19 at 2 (quoting *FCA Invs. Co. v. Baycorp Holdings, Ltd.*, No. 01-20717, 2002 WL 31049442, at*3 (5th Cir. Aug. 29, 2002))). Halcyon also pointed out that Glatt did not oppose pendent personal jurisdiction, complained that Glatt raised new arguments in its reply, and argued that the court should deny the motions for failure to state a claim and judgment on the pleadings. (*Id.* at 6–12).

The parties' arguments are considered in detail below.

## II. Analysis

The court looks first at personal jurisdiction, then at venue, and finally at the motions for failure to state a claim and judgment on the pleadings. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) ("[T]hreshold disputes over venue and jurisdiction should be resolved before merits disputes."); *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) ("[A] court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim.").

### A. Personal Jurisdiction

The Federal Rules of Civil Procedure allow a defendant to move to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "[A] plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The court may consider the well-pleaded allegations and "the record at the time of the motion," accepting the uncontroverted allegations as true and resolving factual conflicts in the nonmovant's favor. *Id.* (quoting *Paz v. Brush Engineering Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)); *Halliburton Energy Servs., Inc. v. Ironshoe Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

The court has personal jurisdiction "if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha*, 882 F.3d at 101. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). Due process requires that "the non-resident defendant 'purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state,'" and that "the 'exercise of jurisdiction does not offend traditional notions

of fair play and substantial justice.'" *Ironshoe*, 921 F.3d at 539 (alteration omitted) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)).

"For there to be minimum contacts, a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quotations omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 193–94 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[J]urisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Id.* at 194 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

"'Minimum contacts' can give rise to either specific jurisdiction or general jurisdiction." *Sangha*, 882 F.3d at 101 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). "Specific jurisdiction may exist 'over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Id.* (emphasis in original) (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)). "A court may assert general jurisdiction over non-resident defendants to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (alterations omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Because Halcyon does not argue, nor does the record support, general jurisdiction, the court focuses on whether Glatt "has purposefully directed its activities at the forum state and the

litigation results from alleged injuries that arise out of or relate to those activities." *Ironshoe*, 921 F.3d at 539–40 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).

### 1. Specific Jurisdiction

Halcyon's agreement with Glatt, standing alone, does not subject Glatt to personal jurisdiction in Texas courts. *See id.* at 544 ("[A]n individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum." (alteration and emphasis omitted) (quoting *Burger King*, 471 U.S. at 478)). The court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

Halcyon argues that Glatt has Texas contacts from the phone calls, emails, and electronic documents exchanged between Glatt and Halcyon, and from Glatt's website. Communications and document exchanges related to contract negotiations and performance are not enough to show specific personal jurisdiction.[1] The sale proposal anticipated performance primarily in New Jersey, with only shipment to and payment from Texas. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("Our conclusion is further bolstered by the fact that performance of the contract was centered in Oklahoma rather than Texas."). Raw materials would be sent to Glatt in New Jersey, Glatt would make the tablets in New Jersey, the tablets would conform with federal

[1] *See First Metro. Church of Hous. v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015) ("Negotiating and closing a contract with a forum resident by sending communications into the forum state is insufficient to establish specific personal jurisdiction for a breach of contract claim, at least if the contract does not contemplate a long-term relationship with continuing obligations and wide-reaching contacts." (alteration and quotation omitted)); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

and New Jersey standards, New Jersey sales tax would apply, and Halcyon would accept delivery in New Jersey.

Halcyon alleges that Glatt's website is "semi-interactive" and that included a contact form that Halcyon used. (Docket Entry No. 9 at 2–3). But the website is generally accessible with no discernible geographic limits and does not target Texas residents. (*See* Docket Entry No. 8-1 at 3). The court has no basis to find that Glatt purposefully directed activities at Texas through the website. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227–28 (5th Cir. 2012).

Glatt's Texas contacts, without more, are not enough for a prima facie showing that Glatt purposefully availed itself of Texas law so as to reasonably anticipate litigating a breach of contract claim in Texas. *See United Energy*, 818 F.3d at 213 ("[P]ersonal jurisdiction is proper only when the relationship arises out of contacts that the defendant creates with the forum state, and not the defendant's contacts with the plaintiff or third parties." (alteration and quotation omitted)).

The minimum contacts required for such intentional torts as fraud differ from those required for contract breach. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). "In a series of opinions, the United States Court of Appeals for the Fifth Circuit has ruled that a court may exercise specific jurisdiction over a nonresident defendant based on a single communication the defendant directs into the forum, provided the actual content of that communication gives rise to an intentional tort." *Blackmon v. Bracken Constr. Co., Inc.*, Civ. A. No. 18-142, 2018 WL 4100684, at *2 (M.D. La. Aug. 28, 2018); *see Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018); *Fresne*, 252 F.3d at 358–59; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999);

*N. Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 628 (N.D. Tex. 2015). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Fresne*, 252 F.3d at 358–59.

Halcyon argues that misrepresentations in its calls and emails with Glatt show personal jurisdiction over Glatt. The allegations and submissions show that Glatt sent emails containing statements that it could meet Halcyon's tablet requirements, Glatt would continue working on the tablets if Halcyon paid a part of the invoiced amounts, and Glatt would return the column and tooling if Halcyon provided an address. The record supports an inference that Glatt employees scheduled calls with Halcyon, initiated email exchanges, and actively participated in conversations that allegedly made misrepresentations. These allegations are enough for a prima facie showing of personal jurisdiction for the fraud claims. *See, e.g.*, *Trois*, 882 F.3d at 491 ("The defendants should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations."); *Nat'l Oil Well Varco, L.P. v. Sadagopan*, No. H-16-2261, 2017 WL 2957908, at *5–*6 (S.D. Tex. July 11, 2017).

Glatt contends that exercising personal jurisdiction would offend notions of fair play and justice because the evidence and witnesses are in New Jersey. (Docket Entry No. 8 at 17). "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wein Air*, 195 F.3d at 215. The defendant must make a "compelling case" against jurisdiction; it is "rare to say the assertion is unfair after minimum contacts have been shown." *Id.* (quoting *Burger King*, 471 U.S. at 477). The court must balance the burden on the defendant of litigating in the forum; the forum state's interests in the lawsuit; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies.

*Id.* "If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Id.*

Texas "clearly" has an interest because "the dispute involves a [company] whose principal place of business is in Texas, and the [company] was allegedly defrauded." *Id.* While litigating in Texas would burden Glatt, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id.* It is far from clear that Glatt's burden would be heavy given that many documents are electronic, Gifford communicated with only a few Glatt employees, and much of the discovery can be done where the evidence and witnesses are located. The current record does not show that litigating in Texas places an "overwhelming burden" on Glatt. *Id.* at 216.

**2. Pendent Jurisdiction**

Halcyon argues that the court should exercise personal jurisdiction over the other claims through pendent jurisdiction, a doctrine that the Fifth Circuit has yet to consider. (Docket Entry No. 10 at 7–10). "Although the Fifth Circuit has not yet addressed pendent personal jurisdiction, this district and every circuit to decide the issue have approved the doctrine." *Sadagopan*, 2017 WL 2957908, at *6 (quotation omitted). "Pendent personal jurisdiction 'exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Id.* (quoting *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008)). Pendent jurisdiction promotes "judicial economy,

avoidance of piecemeal litigation[,] and the overall convenience of the parties." *Canyon Furniture Co. v. Rueda Sanchez*, No. 18-CV-753, 2018 WL 6265041, at *13 (W.D. Tex. Nov. 8, 2018). The court has discretion to exercise pendant jurisdiction. *Sadagopan*, 2017 WL 2957908, at *6.

The facts underlying the contract-breach and conversion claims, including the non-fraud DTPA violations, are the same as those supporting the fraud claims—that through a course of dealing with Halcyon, Glatt failed to honor agreed terms for the tablet requirements, invoice payment, and return of the column and tooling. The "'core facts' are the same." *Canyon Furniture*, 2018 WL 6265041, at *13 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). Asserting pendent jurisdiction over the non-fraud claims is efficient because much of the evidence is in Texas and judicial economy favors resolving related claims together. *See, e.g.*, *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 696 (S.D. Tex. 2011) ("Plaintiffs' causes of action all involve the same nucleus of operative fact, namely the course of dealing between Plaintiffs and Hall, over a period of several years, beginning with the first interactions between the parties. . . . The assertion of pendent personal jurisdiction over Hall is therefore proper, for all causes of action."); *Sadagopan*, 2017 WL 2957908, at *6.

**B. Venue**

A defendant may move to dismiss or transfer an action for improper venue. FED. R. CIV. P. 12(b)(3). Civil actions may be brought in a judicial district where a defendant resides, if all defendants reside in the same state; a district where a substantial part of the events or omissions giving rise to the claim occurred; or, if there is no district where an action may be brought, any judicial district where the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). The court may dismiss or transfer a case for improper venue. 28 U.S.C. § 1406(a).

In considering an improper-venue motion, the court views all facts in the light most favorable to the plaintiff, looking "beyond simply those facts alleged in the complaint and its proper attachments." *Trois*, 882 F.3d at 493 (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). The court must determine "whether the case falls within one of the three categories set out in § 1391(b)." *Id.* (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013)). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred." *Id.* (quoting *Atl. Marine*, 571 U.S. at 56).

In *Trois*, the Fifth Circuit held that "the direction of fraudulent misrepresentations alone can be enough to establish venue for a fraud claim where that claim derives from the communications." *Id.* at 494. Here, as in *Trois*, Glatt's alleged "misrepresentations directed at Texas are a substantial part of the events giving rise to the alleged fraud." *Id.* The Southern District of Texas, where Halcyon received the emails and phone calls containing the alleged misrepresentations, is a proper venue for the fraud claims.

Halcyon argues that the court should exercise pendent venue over the non-fraud claims. (Docket Entry No. 10 at 11). Similar to pendent jurisdiction, "[t]he doctrine of pendent venue allows a court to hear an improperly venued claim if it is joined in a suit with a claim that is properly venued, and the claims arise out of a common nucleus of operative fact." *Gremillion v. Lockheed Martin Corp. Grp. Benefits Plan*, Civ. A. No. 14-2987, 2015 WL 3863375, at *2 (E.D. La. June 22, 2015); *see Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5 F.3d 911, 921–22 (5th Cir. 1993); *Andra Grp., LP v. BareWeb, Inc.*, No. 17-CV-815, 2018 WL 2848985, at *8 (E.D. Tex. June 11, 2018). Halcyon's claims arise out of the same nucleus of operative fact—the course of dealing with Glatt on the tablets—and Glatt has not argued for transfer to the District of New Jersey. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("[H]e who

seeks the transfer must show good cause." (quotation omitted)). The court finds that venue is proper.

### C. Failure to State a Claim

Halcyon amended its complaint after Glatt moved to dismiss. The original complaint spanned 9 pages and had no attachments. (Docket Entry No. 1). The amended complaint spans 36 pages and has 20 attachments, laying out in considerable detail the alleged misrepresentations and contract breaches. (Docket Entry No. 9). The court denies the Rule 12(b)(6) and 12(c) motions, without prejudice, both because the amended complaint made them moot,[2] and because the parties noted that there is a choice-of-law issue but have neither cited authority nor explained whether Texas or New Jersey law applies. Any future dispositive motion must address which law applies to Halcyon's claims and the impact on claim sufficiency.

## III. Conclusion

Halcyon's motions to dismiss for lack of personal jurisdiction, improper venue, and failure to state a plausible claim are denied; the motion for judgment on the pleadings is also denied. (Docket Entry No. 8).

SIGNED on June 10, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

---

[2] *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007); *Rodriguez v. Xerox Bus. Servs., LLC*, No. EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016); *Bell v. Moawad Grp., LLC*, No. A-17-CA-73-SS, 2017 WL 2841679, at *2 n.1 (W.D. Tex. June 30, 2017) ("Whether the filing of an amended complaint renders a motion to dismiss moot is discretionary."); *see, e.g.*, *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017); *Stredwick v. Dall. Margarita Soc'y, Inc.*, No. 12-CV-623-F, 2012 WL 12893430, at *1 (N.D. Tex. June 27, 2012).